Alan MASSEY, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A05–1012–PC–808.

Court of Appeals of Indiana.

Oct. 19, 2011.

250

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary and Issues

Alan Massey shot and killed his girlfriend after she told him that she wanted to end their relationship and that he needed to move out of their residence. The State charged Massey with murder. At trial, Massey argued that he was emotionally devastated when his girlfriend told him that their relationship was over and shot her under sudden heat. Massey asked for and the trial court gave the jury an instruction on voluntary manslaughter. The jury found Massey guilty of murder. The trial court sentenced Massey to the fifty-five-year presumptive term for murder.

Massey brought a direct appeal, but his conviction was affirmed. He then sought post-conviction relief, which was denied. He now appeals the denial of post-conviction relief, arguing that his trial and appellate counsel provided ineffective assistance. Specifically, he asserts that his trial counsel was ineffective in failing to ensure that the jury was correctly informed regarding the proof required for a voluntary manslaughter verdict. Massey also contends that his appellate counsel was ineffective in failing to argue that the trial court erroneously imposed the presumptive sentence by balancing an invalid aggravating factor with a valid mitigating factor.

We conclude that even though the jury was improperly instructed regarding the elements of voluntary manslaughter, Massey was not entitled to the voluntary manslaughter instruction in the first place because his girlfriend's words ending their relationship do not constitute sufficient provocation to induce sudden heat. Accordingly, we conclude that Massey did not receive ineffective assistance of trial counsel. As for appellate counsel's failure to raise the sentencing issue, we conclude that Massey has failed to carry his burden to show that the issue was significant and obvious on the face of the record and clearly stronger than the other issues raised. Thus, Massey did not receive ineffective assistance of appellate counsel. Finding no error, we affirm the post-conviction courts judgment.

### Facts and Procedural History

The facts underlying Massey's conviction were set forth in the memorandum decision issued on direct appeal as follows:

Massey and Shirley Mitchell ("Mitchell") were involved in a romantic relationship for approximately nineteen years. They lived together at an Indianapolis residence on 27th Street, with their son, M.M., and Mitchell's daughter, [L.M.].

In late January of 2004, Mitchell gave Massey a letter indicating that their relationship was over and requesting that Massey find another place to live. Massey moved to his mothers house. On January 31, 2004, Massey returned to the Indianapolis residence and used his key to get inside. He went into the kitchen, prepared a drink, and wrote the following note:

Shirley:

I have always really loved you. Just never could really express myself.

Family:

To the familys [sic] of Alan & Shirley I am sorry for what I have done. But I cant except [sic] the fact

of loosing [sic] the one woman that I truly love along with my

family.

Clock–in–Out

Use my milatary [sic] picture on my obituary.

Sorry

Love to All

Alan

(States Ex. 9.) Massey then went upstairs. M.M. told [L.M.] that Massey was there, and [L.M.] approached her mothers bedroom door and knocked. Mitchell did not answer, but [L.M.] could hear her crying softly. [L.M.] tried to open the door, but it was locked.

[L.M.] heard a gunshot and ran down the stairs. She then remembered that M.M. was upstairs, so she ran back up the stairs and "dragged him down the stairs." (Tr. 41.) Once they reached the living room, [L.M.] heard more gunshots and heard Massey yell, "call the police." (Tr. 42.) [L.M.] dialed 9–1–1.

Responding police officers kicked in the bedroom door after Massey assured them that he had put down his gun. The officers discovered that Mitchell had been shot in the head, and Massey had been shot in the stomach. Mitchell subsequently died of her injuries.

*Massey v. State*, No. 49A04–0506–CR–322, slip op. at 2–3, 844 N.E.2d 1080 (Ind.Ct. App. Feb. 21, 2006). On February 5, 2004, the State charged Massey with murder. Trial by jury was held May 2 and 3, 2005. At trial, Massey did not deny that he shot and killed Mitchell, but argued that he was guilty of voluntary manslaughter, rather than murder, because he shot Mitchell under sudden heat. The trial court provided the jury with an instruction regarding voluntary manslaughter, but the jury found Massey guilty as charged. At the sentencing hearing on May 20, 2005, the trial court found one aggravating factor, Massey's conviction for operating while intoxicated, to be in equipoise with one mitigating factor, Massey's military service, and

sentenced Massey to the presumptive term of fifty-five years.

Massey appealed, raising three issues: (1) whether the trial courts instruction on voluntary manslaughter constituted fundamental error; (2) whether the trial court abused its discretion by refusing his tendered instruction on the lesser-included offense of reckless homicide; and (3) whether the trial court abused its discretion in admitting certain evidence. *Id.*, slip op. at 2. Another panel of this Court concluded that the voluntary manslaughter instruction failed to properly instruct the jury on the elements of voluntary manslaughter but that the error was not fundamental. *Id.*, slip op. at 6. The panel also concluded that the trial court properly refused to instruct the jury on reckless homicide, and that Massey failed to show reversible error in the admission of evidence. *Id.*, slip op. at 11. Accordingly, the panel affirmed Massey's murder conviction.

On September 30, 2009, Massey filed his petition for post-conviction relief ("PCR"), alleging that (1) his trial counsel was ineffective in failing to ensure that the jury was properly instructed regarding the elements of voluntary manslaughter and (2) his appellate counsel was ineffective in failing to argue that the trial court erred in sentencing him. Appellant's App. at 26–27. On June 11, 2011, a hearing was held on Massey's PCR petition. The parties each filed proposed findings of fact and conclusions of law. On November 10, 2010, the PCR court issued its judgment denying Massey's petition.

Massey appeals. Additional facts will be provided.

### Discussion and Decision

#### *Standard of Review*

■■■ This is an appeal from the denial of a PCR petition.

We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post–Conviction Rules. [Ind. Post–Conviction Rule 1(1) ]. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State,* 924 N.E.2d 1274, 1280 (Ind.Ct.App.2010) (citations omitted), *trans. denied.*

## I. Ineffective Assistance of Trial Counsel

■ Massey contends that trial counsel was ineffective in failing to ensure that the jury was correctly instructed regarding voluntary manslaughter. The Sixth Amendment to the United States Constitution protects the right to counsel and the right to effective assistance of counsel.[1] To prevail on a claim of ineffective assistance, the petitioner must demonstrate that (1) counsels performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsels per-

formance prejudiced the defendant such that there is "a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different." *Ritchie v. State,* 875 N.E.2d 706, 714 (Ind.2007) (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[A] court need not determine whether counsels performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.*

■ Massey was charged with murder. To obtain a conviction for murder, the State was required to prove beyond a reasonable doubt that Massey knowingly or intentionally killed another human being. Ind.Code § 35–42–1–1. The only difference between murder and voluntary manslaughter is the existence of sudden heat, which for purposes of voluntary manslaughter is manifested by emotions such as anger, rage, sudden resentment, or terror sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection. *Evans v. State,* 727 N.E.2d 1072, 1077 (Ind.2000). Voluntary manslaughter is defined in Indiana Code Section 35–42–1–3, which provides in relevant part, "A person who knowingly or intentionally kills another human being ... while acting under sudden heat commits voluntary manslaughter, a class B felony. However the offense is a Class A felony if it is committed by means of a deadly weapon." In addition, Section 35–

---

1. The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the ac-

cused shall enjoy the right ... to have the Assistance of Counsel for his defense."

42–1–3 explains, "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of the chapter to voluntary manslaughter."

The jury instruction on voluntary manslaughter given at Massey's trial read:

> Included in the crime of Murder is the offense of Voluntary Manslaughter.
>
> Under the laws of the State of Indiana, the crime of Voluntary Manslaughter is defined by statute as follows:
>
> "A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B Felony, however the offense is a Class A Felony if it is committed by a deadly weapon."[2]
>
> The existent [sic] of "sudden heat" is a mitigating factor that reduces otherwise what would be Murder to Voluntary Manslaughter.[3]
>
> To convict the Defendant, Alan Massey, of the crime of Voluntary Manslaughter, a Class A Felony as a lesser included charge of Count I, *the State must prove* each of the following elements:
>
> That the Defendant, Alan Massey,
>
> 1. knowingly or intentionally,
>
> 2. killed Shirley Mitchell, a human being
>
> 3. *and the defendant was acting under sudden heat,*
>
> 4. and the defendant killed by means of a dead[ly] weapon, that is: a handgun[.]
>
> If the State did prove each of the essential elements of the crime of Voluntary Manslaughter beyond a reasonable doubt, you should find the Defendant guilty of Voluntary Manslaughter, a Class A felony, an included offense of the crime of Murder.

Direct Appeal App. at 80–81 (emphases added).

 In Massey's direct appeal, another panel of this Court concluded that the trial court's voluntary manslaughter instruction erroneously indicated that the presence of sudden heat was an element of voluntary manslaughter that the State had to prove beyond a reasonable doubt. *Massey,* slip op. at 6. Having so decided, we are precluded from revisiting that issue. *See Collins v. State,* 873 N.E.2d 149, 158 (Ind.Ct.App.2007) ("Issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in a subsequent lawsuit.") (citation omitted), *trans. denied.* However, on direct appeal we further concluded that although the instruction was technically erroneous, it did not constitute fundamental error because it informed the jury that sudden heat was a mitigating factor that reduces murder to voluntary manslaughter. *Massey,* slip op. at 6. The fact that we found that the instruction was not fundamentally erroneous does not foreclose a finding of ineffective assistance of trial counsel. This is so "because the standard for ineffective assistance prejudice is based on a reasonable probability of a different result and fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible," and therefore, "the standard required to establish fundamental error presents a higher bar." *Benefield v. State,* 945 N.E.2d 791, 804 (Ind.Ct.App.2011). As such, the question whether trial counsel provided ineffective assistance by failing to

---

2. Ind.Code § 35–42–1–3(a).

3. Ind.Code § 35–41–1–3(b).

ensure that the jury was properly instructed as to voluntary manslaughter has not been addressed or answered. We now examine that question.

We have previously considered an ineffective assistance claim involving trial counsels failure to ensure that the jury received the correct law pertaining to voluntary manslaughter. In *Eichelberger v. State*, 852 N.E.2d 631 (Ind.Ct.App.2006), *trans. denied,* another panel of this Court noted, "It is well settled in Indiana that [the existence of] sudden heat is *not* an element of voluntary manslaughter." *Id.* at 636 (citing *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind.2002) (emphasis added)); *see also Isom v. State*, 651 N.E.2d 1151, 1152 (Ind.1995); *Palmer v. State*, 573 N.E.2d 880, 880 (Ind.1991), *opinion on reh'g; Wilcoxen v. State*, 705 N.E.2d 198, 203 (Ind.Ct.App.1999), *trans. denied; Bane v. State*, 587 N.E.2d 97, 100 (Ind. 1992). Therefore, "[a]n instruction [on voluntary manslaughter] assigning the burden of affirmatively proving sudden heat to the State is erroneous as a matter of law." *Id.* However, "once a defendant presents evidence of sudden heat, [to obtain a conviction for murder rather than voluntary manslaughter,] *the State bears the burden of disproving* its existence beyond a reasonable doubt." *Id.* (emphasis added). The United States Supreme Court has held that the Due Process clause " 'requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation

when the issue is properly presented in a homicide case.' " *Id.* at 638 (quoting *Sanders v. Cotton*, 398 F.3d 572, 581 (7th Cir.2005)). In addition, " 'the complete failure to give any jury instruction on an essential element of the offense charged, under circumstances indicating that the jury was not otherwise informed of the necessity of proof of the element, is a violation of due process.' " *Id.* (quoting *Sanders*, 398 F.3d at 581–82).

 The *Eichelberger* court, relying on *Sanders* to resolve the appellant's ineffective assistance claim, concluded as follows,

> Like the jury instruction in *Sanders,* the voluntary manslaughter instruction that Eichelberger's trial counsel tendered erroneously stated that the State had to prove beyond a reasonable doubt the presence of sudden heat to obtain a voluntary manslaughter conviction. And even though the voluntary manslaughter instruction also stated that the existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter, Eichelberger's trial counsel failed to ensure that the jury was properly instructed that *the absence of sudden heat is an element of murder on which the State bears the burden of proof*[4] This is a due process violation that requires a new trial. As a result, Eichelberger has proved both deficient performance and prejudice on the part of his trial counsel.[5]

4. We observe that the absence of sudden heat is not a statutory element of murder. Ind. Code § 35–42–1–1. To be clear, if there is *no evidence* of sudden heat, the State is not required to prove the absence of sudden heat beyond a reasonable doubt to obtain a murder conviction. It bears repeating that *only* when evidence of sudden heat is presented does the State assume the burden of proving the absence of sudden heat to obtain a murder conviction.

5. The State asserts that "the *Eichelberger* Courts presumption of prejudice is at odds with this Courts later decision in *Benefield*, [945 N.E.2d 791,] that indicates that a petitioner seeking post-conviction relief claiming ineffectiveness of trial counsel for failing to object to an erroneous instruction must still establish prejudice under *Strickland.*" Appellees Br. at 13–14. We disagree that *Eichelberger* and *Benefield* are at odds for three

*Id.* at 639 (emphasis added) (citations omitted).

 Massey contends that his case is like *Eichelberger*. In terms of the content of the voluntary manslaughter instruction, he is correct. Like the instruction in *Eichelberger*, the jury instruction in Massey's trial erroneously instructed the jury that to find Massey guilty of voluntary manslaughter the State had to prove that he acted under sudden heat and simultaneously failed to inform the jury that to find Massey guilty of murder, the State was required to prove *the absence of sudden heat*. However, the erroneous instruction did not deprive Massey of due process because, as discussed below, he was not entitled to the voluntary manslaughter instruction in the first place.

 An instruction on voluntary manslaughter is warranted if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of sudden heat; that is, there must be evidence showing sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection.[6] *Clark v. State,* 834 N.E.2d 153, 158 (Ind.Ct.App. 2005).

> Sudden heat is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. Anger alone is not sufficient to support an instruction on sudden heat. Nor will words alone constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter, and this is especially true when the words at issue are not intentionally designed to provoke the defendant, such as fighting words.

In addition to the requirement of something more than mere words, the

---

reasons. First, the instruction at issue in *Eichelberger* completely omitted an element of the offense that the State is required to prove to obtain a conviction. 852 N.E.2d at 638–39. The instruction in *Benefield* contained an erroneous definition of "defraud." 945 N.E.2d at 800. Second, to determine whether a due process violation occurred, the *Eichelberger* court did not consider "the erroneous instruction in isolation, but in the context of all relevant information given to the jury." 852 N.E.2d at 636 (quoting *Boesch,* 778 N.E.2d at 1279.). The *Benefield* court also considered the totality of the instructions provided to the jury to determine whether prejudice occurred. 945 N.E.2d at 805–06. Thus, both cases looked at all the information given to the jury, the only difference being the formulation of the analysis. The *Eichelberger* court considered the totality of the information given to the jury as part of its due process analysis, and the *Benefield* court addressed the totality of the information in terms of prejudice, but the effect is the same. Third, in *Benefield,* the appellant argued only that the *cumulative* prejudice resulting from the erroneous definition of "defraud" combined with counsels failure to object to evidence resulted in sufficient prejudice to satisfy the *Strickland* standard. 945 N.E.2d at 805–06.

6. It has long been stated that voluntary manslaughter is an inherently lesser included offense of murder. *See Ross v. State,* 877 N.E.2d 829, 836 (Ind.Ct.App.2007) (listing cases so stating), *trans. denied.* In *Ross,* another panel of this Court clarified that only class B felony voluntary manslaughter is an inherently lesser included offense of murder. *Id.* However, class A felony voluntary manslaughter specifically requires the State to prove that the crime was committed with a deadly weapon. *Id.* Class A felony voluntary manslaughter can be a factually lesser included offense of murder if the charging instrument for murder alleges that the accused used a deadly weapon to commit the offense. *Id.* Here, the charging information alleged that Massey shot Mitchell with a deadly weapon. Trial Appellant's App. at 23. Therefore in Massey's case, class A felony voluntary manslaughter was a factually lesser included offense of murder.

provocation must be sufficient to obscure the reason of an ordinary man, an objective as opposed to subjective standard. Finally, Voluntary Manslaughter involves an impetus to kill which arises suddenly.

*Suprenant v. State,* 925 N.E.2d 1280, 1282–83 (Ind.Ct.App.2010) (citations and quotation marks omitted), *trans. denied.* "[A]ny appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter." *Dearman v. State,* 743 N.E.2d 757, 760 (Ind.2001) (citing *Roark v. State,* 573 N.E.2d 881, 882 (Ind.1991)). However, if there is no evidence of sudden heat, it is reversible error to give an instruction on voluntary manslaughter. *Watts v. State,* 885 N.E.2d 1228, 1232–33 (Ind.2008).

▇▇▇ Massey's theory on sudden heat was based on the premise that he was hoping that he and Mitchell could work things out when he returned to Mitchell's residence the week after she gave him the note ending their relationship. Trial Tr. at 219. According to Massey, when Mitchell told him that their relationship was really over and that he had to live somewhere else, he was "devastated, he broke," and in the heat of his overwhelming emotion, he shot Mitchell before shooting himself. *Id.* Words *alone,* however, do not constitute sufficient provocation, especially words that are not intentionally designed to provoke. *Suprenant,* 925 N.E.2d at 1283. Here, Mitchell merely stated her desire to end her relationship with Massey. Massey never asserted that any actions accompanied her words. A mere expression of ones desire to end a relationship cannot, as a matter of law, constitute sufficient provocation to induce passion that renders a

reasonable person incapable of cool reflection sufficient to warrant a voluntary manslaughter instruction. *See Perigo v. State,* 541 N.E.2d 936, 939 (Ind.1989) (concluding that girlfriends confession of illicit sex was not sufficient provocation to reduce murder to voluntary manslaughter); *but cf. Evans,* 727 N.E.2d at 1077 (concluding that mitigating factor of sudden heat was adequately introduced by evidence that sudden rage came over defendant after he saw another man engaging in sexual intercourse with his girlfriend, the mother of his child). Because there was no serious evidentiary dispute as to whether Massey was acting under sudden heat, Massey was not entitled to an instruction on voluntary manslaughter. *See Suprenant,* 925 N.E.2d at 1284 (concluding that voluntary manslaughter instruction was not warranted where "alleged provocation was comprised of words ending a relationship accompanied by preparations to leave."). It follows that the erroneous instruction did not prejudice Massey. Accordingly, we conclude that trial counsel did not provide ineffective assistance regarding the voluntary manslaughter instruction.[7]

## II. Ineffective Assistance of Appellate Counsel

▇▇▇ The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel. *Bieghler v. State,* 690 N.E.2d 188, 192 (Ind. 1997). The petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would

7. Having concluded that Massey was not entitled to an instruction on voluntary manslaughter, we need not consider Massey's contention that the error in the instruction was compounded by trial counsel's failure to object to the prosecutor's closing statement regarding sudden heat. Appellant's Br. at 12.

have been different. *Overstreet v. State,* 877 N.E.2d 144, 165 (Ind.2007). As with ineffective assistance of trial counsel claims, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied* (2002).

There are three different grounds for claims of ineffective assistance of appellate counsel: (1) counsel's actions denied the defendant access to appeal; (2) counsel failed to raise issues on direct appeal resulting in waiver of those issues; and (3) counsel failed to present issues well. *Wrinkles v. State,* 749 N.E.2d 1179, 1203 (Ind.2001). Massey's claim is based on failure to raise an issue. "Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed v. State,* 856 N.E.2d 1189, 1196 (Ind.2006). This is so because the choice of what issues to raise on appeal is one of the most important strategic decisions appellate counsel makes. *Stevens v. State,* 770 N.E.2d 739, 760 (Ind.2002). To establish deficient performance for failing to raise an issue, the petitioner must show that the unraised issue was significant and obvious on the face of the record and that it was clearly stronger than the issues raised. *Fisher v. State,* 810 N.E.2d 674, 677 (Ind.2004). " 'We give considerable deference to appellate counsel's strategic decisions and will not find deficient performance in appellate counsel's choice of some issues over others when the choice was reasonable in light of the facts of the case and the precedent available to counsel at the time the decision was made.' " *Brown v. State,* 880 N.E.2d 1226, 1230 (Ind.Ct.App.2008) (quoting *Taylor v. State,*

717 N.E.2d 90, 94 (Ind.1999)), *trans. denied.* We must consider the totality of an attorney's performance and "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy." *Reed,* 856 N.E.2d at 1195–96.

Massey asserts that his appellate counsel provided constitutionally inadequate assistance by failing to argue that the trial court erred in sentencing him to the presumptive term.[8] Under the statutory sentencing scheme in effect when Massey committed his offense, the trial court was authorized to impose the statutory presumptive sentence or to enhance or reduce the presumptive sentence based upon a finding and balancing of aggravating and mitigating circumstances. *Kien v. State,* 782 N.E.2d 398, 416 (Ind.Ct.App.2003), *trans. denied.* If a trial court used aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it had to (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance was determined to be mitigating or aggravating; and (3) articulate its evaluation and balancing of the circumstances. *Patterson v. State,* 846 N.E.2d 723, 727 (Ind.Ct.App.2006). If the trial court imposed the presumptive sentence, it was not required to explain its basis for doing so. *Berry v. State,* 819 N.E.2d 443, 452 (Ind.Ct.App.2004), *trans. denied; see also Jones v. State,* 698 N.E.2d 289, 290 (Ind. 1998) (because the trial court imposed the presumptive term for murder it "was not required to state a basis for imposing that sentence."). However, in Massey's case, the trial court articulated its reasons for imposing the presumptive sentence:

8. The presumptive sentence for murder was fifty-five years. Ind.Code § 35–50–2–3 (prior to Pub. Law 71–2005, which revised sentencing statutes to current advisory scheme).

The Court has weighed the mitigating circumstances. You did serve in the military for ten years.[9] The Court also considers as an aggravator the fact that you do have the 2000 conviction for drunk driving. And I'm going to find that they balance and sentence you to the presumptive term of 55 years in the Department of Corrections.

Trial Tr. at 254.

Massey contends that his conviction for driving while intoxicated is not an appropriate aggravating factor for a murder conviction, and therefore there were no aggravating factors to offset the one mitigating factor, which should result in a sentence less than the presumptive. According to Massey, if appellate counsel had presented this argument, this Court would have remanded his case for resentencing. *See, e.g., Comer v. State,* 839 N.E.2d 721, 730 (Ind.Ct.App.2005) (remanding for resentencing because appellate court could not say with confidence that trial court would have sentenced defendant to same sentence if trial court had not considered improper aggravators), *trans. denied* (2006).

In support of his argument, Massey cites *Wooley v. State,* 716 N.E.2d 919, 929 (Ind.1999), in which our supreme court concluded that the defendants history consisting of a single, nonviolent misdemeanor was not a significant aggravator in the context of a sentence for murder. The *Wooley* court explained,

Our decisional law requires that the trial courts identify all "significant" aggravating circumstances. Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense. Therefore, a criminal history comprised of a prior

conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. However, this criminal history does not command the same significance at a sentencing hearing for murder.

*Id.* at 929 n. 4 (citations omitted). Wooley had received the sixty-five-year maximum sentence for his murder conviction. The *Wooley* court concluded that two out of the three aggravating factors found by the trial court were improper, and because it could not say with confidence that the trial court would have imposed the maximum sentence based on the sole remaining aggravating factor, it remanded for a new sentencing hearing. *Id.* at 933.

Massey also relies on *Laughner v. State,* 769 N.E.2d 1147, 1162 (Ind.Ct.App.2002), *trans. denied, abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201 (Ind. 2007), in which another panel of this Court stated that "that which cannot be used to enhance a sentence cannot be used to balance circumstances that may properly serve to reduce the sentence as mitigators." Laughner's trial court had found several aggravating factors and several mitigating factors that were in equipoise and imposed the presumptive four-year sentence for Laughner's class C felony conviction. On appeal, the *Laughner* court concluded that *all* the aggravating factors found by the trial court were improper. *Id.* Due to the existence of *several* valid mitigating circumstances, the court remanded for resentencing below the presumptive term.

Neither *Wooley* nor *Laughner* is on all fours with the case at bar. Unlike this case, *Wooley* rejected *several* aggravators

9. The trial court noted that Massey's presentence investigation report did not mention his military service. Trial Tr. at 251.

relied on by the trial court to impose the *maximum* sentence. As to *Laughner,* although the defendant received the presumptive sentence, the trial court there had found *several* valid mitigating circumstances. Here, the trial court found only a single mitigator.[10] As such, neither case persuades us that a sentencing error was significant and obvious on the face of the record.

■ Furthermore, in this case, the trial court's sentencing statement does not suggest that the trial court attributed significant weight to either the aggravating factor or the mitigating factor. The record reveals little regarding Massey's military service, which was not acknowledged in his presentence investigation report. At the sentencing hearing, Massey claimed that he had served from 1980 to 1990 and was honorably discharged. A defendant's military service may be assigned some mitigating weight, but it is not necessarily a significant mitigating factor. *See Baird v. State,* 604 N.E.2d 1170, 1182 (Ind.1992) (attributing defendant's military service mitigating weight in the low range); *Forgey v. State,* 886 N.E.2d 16, 23–24 (Ind.Ct. App.2008) (finding trial court was within its discretion in rejecting defendant's military record as a mitigating factor). Thus, it is unlikely that this Court on direct appeal would have remanded Massey's case for resentencing based on a lack of confidence that the trial court would have imposed the same sentence if it had not considered Massey's conviction for driving while intoxicated.

Massey has failed to carry his burden to show that the sentencing issue was significant and obvious on the face of the record and clearly stronger than the three issues

raised by his counsel. In fact, on direct appeal this Court agreed with appellate counsel that the voluntary manslaughter instruction was erroneous, albeit not fundamentally erroneous. As such, we conclude that Massey did not receive ineffective assistance of appellate counsel and affirm the judgment of the post-conviction court.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

10. Massey also cites *Eaton v. State,* 825 N.E.2d 1287 (Ind.Ct.App.2005), *disapproved on other grounds by Davidson v. State,* 926 N.E.2d 1023 (Ind.2010), but like *Laughner,*

*Eaton* involved more than one mitigating factor.