**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN A. ENGLAND**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 14 2014, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

TYRONE A. THOMPSON,                    )
                                       )
    Appellant-Petitioner,              )
                                       )
        vs.                        )    No. 49A02-1309-PC-787
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Respondent.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Magistrate
Cause No. 49G06-1007-PC-57880

**April 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Tyrone Thompson was convicted of class C felony battery stemming from a bar fight during which he struck another patron with a broken beer bottle. He appealed his eight-year sentence, and this Court affirmed. He filed a petition for post-conviction relief, claiming that his trial counsel ("Counsel") provided ineffective assistance during sentencing by failing to introduce documentation to support his mental illness claim. The post-conviction court denied his petition.

Thompson now appeals, contending that the post-conviction court clearly erred in concluding that he failed to establish that he received ineffective assistance of counsel. Finding that Counsel advanced Thompson's mental illness for consideration at sentencing, that the trial court gave it due consideration as a mitigator, and that Thompson was not prejudiced by Counsel's failure to introduce documents to support his mental illness claim, we affirm.

**Facts and Procedural History**

The facts as summarized in an unpublished memorandum decision on Thompson's direct appeal and adopted in the post-conviction court's findings of fact are as follows:

> On July 25, 2010, Justin Mackey (Justin) traveled from Kokomo, Indiana, to Indianapolis, Indiana, to visit his brother Robert Matthew Mackey (Matt) and to attend the Brickyard 400 race the following day. On the night of July 25, they planned to go out to a few bars downtown. First, they went to the Bourbon Street Distillery, where each had one drink. Then they went to another bar and each had a drink there, also. Finally, they went to a bar downtown named Blu because Matt was good friends with a bartender there. Meanwhile, Thompson bought a "little bit" of beer and went to Blu.

When Matt and Justin reached Blu, there was some kind of confrontation in front of the bar involving Thompson. Thompson "turned right into" Matt and Justin and "body[-]checked" Justin. Matt and Justin told Thompson that they did not want any problems, and both of them backed away and tried to walk around him. They continued along the street to a different bar called Hyde, but realized once they got there that Justin's clothing did not meet Hyde's dress code. Therefore, after failing to get into Hyde, both Matt and Justin went back to Blu to try once again to enter the bar.

When Matt and Justin reached Blu the second time, Matt saw Thompson out of the corner of his eye, and Thompson body-checked him. Matt threw his hands up and told Thompson again that he did not want any problems. In response, Thompson "threw his arm" at Matt and knocked the phone out of his hand. Matt reached down to pick up his phone, and at that time Justin thought he saw Thompson reach for something—possibly a gun. To protect Matt, who had his back turned to Thompson, Justin body[-]checked Thompson. In response, Thompson started stabbing Justin with a broken beer bottle.

Subsequently, Thompson backed away from Matt and Justin and went down an alley between Blu and another bar, but Matt started following him so that he could not get away. Once they got down the alley, Thompson said to Matt: "[I will] kill you mother f[***]er," "I'll kill you, your family," and "I'm a gangster." In the alley, and then in the middle of Georgia Street, Thompson and Matt started to swing at each other with their belts. Once they exited the alley, though, police officers were on the scene and handcuffed and arrested Thompson.

Appellant's App. at 98-99 (citing *Thompson v. State*, No. 49A04-1011-CR-694 (Ind. Ct. App. July 7, 2011) (internal citations omitted) (some alterations in *Thompson*)).

The State charged Thompson with class C felony criminal recklessness, class A misdemeanor battery, and class C felony battery. A jury found him guilty of class C felony criminal recklessness and class C felony battery, and the trial court entered judgment only on the battery conviction. At sentencing, the trial court found as mitigating factors Thompson's extensive mental health history and his extensive substance abuse. The trial court found that

3

Thompson's extensive twenty-eight-year criminal history outweighed the mitigators and sentenced him to eight years in the Department of Correction ("DOC").

Thompson appealed his sentence, claiming that the trial court overlooked his impending fatherhood as a mitigator. He also challenged the appropriateness of his sentence under Indiana Appellate Rule 7(B). Another panel of this Court affirmed his sentence. Thompson filed a petition for post-conviction relief, claiming that he received ineffective assistance of counsel based on Counsel's failure to introduce documentation to support his proffered mitigator of mental illness. The post-conviction court denied his petition, and he now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Thompson contends that the post-conviction court erred in denying his petition for post-conviction relief. The petitioner in a post-conviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the post-conviction court must make findings of fact and conclusions of law. Ind. Post-Conviction Rule 1(6). A petitioner who appeals the denial of his post-conviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a

4

mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a post-conviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction court. *Massey*, 955 N.E.2d at 253.

Thompson asserts that he was denied his constitutional right to effective assistance of counsel. To prevail on an ineffective assistance claim, he must satisfy two components. *Id.* He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater*, 989 N.E.2d at 770. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied.* "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011).

We initially acknowledge that the judicial officers who presided over Thompson's original trial also presided over the post-conviction proceedings. This Court has stated that a post-conviction court's findings and judgment should be entitled to "greater than usual deference" when the post-conviction judge is the same judge who conducted the original trial. *McCullough v. State,* 973 N.E.2d 62, 75 (Ind.Ct.App.2012), *trans. denied* (2013). Significantly, in such a case, the trial court is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's deficient performance, there was a reasonable probability that a different result would have been reached. *Id.*

The post-conviction court issued extensive findings of fact and conclusions of law, which state in pertinent part,[1]

9.    During his representation of Thompson, Counsel became aware that Thompson suffered from certain mental health issues, although the extent of these issues did not prevent Thompson from assisting Counsel in the preparation of the case.

10.    Counsel no longer has an independent recollection of any specific mental health diagnosis for Thompson but he believes that Thompson has suffered from bi-polar disorder or schizophrenia, anger management issues and anti-social behavior.

---

[1] Throughout the findings, the post-conviction court referred to Thompson's counsel by name. We refer to him as Counsel.

6

11. Counsel knew that Thompson had received mental health counseling in the past.

12. Counsel knows how to obtain and present mental health evidence and has previously argued incompetency and insanity issues in other cases.

13. As Thompson had requested an early trial setting pursuant to Indiana Criminal Rule 4(B) and insisted on a speedy trial, Counsel had only fifty to sixty days to prepare for trial. This hampered Counsel's ability to obtain Thompson's mental health records in time for trial.

14. Counsel warned Thompson that the speedy trial request was limiting his ability to effectively prepare the case for trial.

15. After the trial, certain jurors commented to Counsel that they hoped Thompson would get help for his mental health issues.

16. At the sentencing hearing, evidence of Thompson's mental health history was presented to the trial court. Counsel elicited testimony from Thompson that he has suffered from schizophrenia and bi-polar disorder for the past fifteen years and that he was receiving treatment at the Horizon House for those conditions.

17. The pre-sentence report also provided the trial court with information regarding Thompson's mental health status, including the fact that he attempted suicide on four prior occasions.

18. Counsel argued to the trial court that Thompson's mental health history should be considered as a mitigating factor for sentencing purposes.

19. After finding Thompson's criminal history to be an aggravating factor, the trial court went on to address a portion of that history:

> He was convicted in June '82 for the 1935 Firearms Act; he was convicted of Robbery in February, 1984; Auto Theft in November of 1987; Felony Escape in 1991; misdemeanor Resisting Law Enforcement and Battery in April of 1992; again, two separate counts of Battery and Resisting Law Enforcement in 1996; and on March 26th of 2009, he was convicted of two different cases one involving Theft and Battery, the second involving Theft and Possession of Paraphernalia. Most recently, within

7

the last twelve months he was convicted of Resisting Law Enforcement on October 27th of 2009; Criminal Conversion in April of 2010; and Possession of Paraphernalia in … May of this year. While not listed in the criminal history[,] [Thompson] has self-reported a federal conviction from the United States District Court of the Southern District of Indiana for felony Possession of a Firearm for which he believes he received an executed sentence of roughly thirteen years.

20. As mitigating factors, the trial court noted Thompson's prior substance abuse history as well as his "extensive mental health history."

21. Finding that the aggravating factors outweighed the mitigating factors and justified the imposition of a sentence above the advisory term, the trial court imposed the maximum eight year executed sentence to be served in the Indiana [DOC].

22. The trial court further requested that Thompson receive all available mental health treatment while incarcerated in the [DOC].

23. Thompson's evidence, as shown in Exhibits 2 through 5, provides a more detailed picture of his mental health issues. However, Thompson merely demonstrates more of the same mitigation evidence rather than evidence overlooked by trial counsel or improperly presented.

24. Beyond presenting this additional mitigation evidence, Thompson has not shown a reasonable probability that the trial court would have given greater mitigating weight to his mental health issues and imposed a lighter sentence had Counsel presented this particular evidence.

25. Thompson had failed to demonstrate that he was prejudiced by Counsel's choice in presentation of mitigation evidence.

26. For the reasons discussed below, the Court finds that the facts are with the State and against the Petitioner.

**CONCLUSIONS OF LAW**

….

31. In this case, Thompson alleges that Counsel was ineffective for failing

8

"to present to the court mental health documents pertaining to Thompson and, further, to adequately question Thompson regarding his mental health problems and treatment as described in those documents."

32. Deficient performance has been found in cases where counsel failed to uncover and present evidence of a defendant's mental issues as a potential mitigating circumstance. However, this is not such a case here.

33. The Court concludes that Thompson's argument fails for want of prejudice. The sentencing transcript reveals that the trial court gave due consideration to Thompson's mental health history in determining the appropriate sentence, and there is no indication in the record that the trial court doubted either the legitimacy or the seriousness of his condition simply because it was self-reported.

34. Had the mental health records produced by Thompson been presented at sentencing, they would have confirmed what the trial court had already accepted as true; namely, that Thompson had been diagnosed with and had received treatment for a psychotic disorder.

35. Petitioner has therefore not shown that his attorney's performance was deficient, and his claim of ineffective assistance of counsel must fail.

Appellant's App. at 99-102, 104-05 (citations and footnote omitted).

The sentencing transcript shows that Counsel elicited testimony from Thompson concerning his mental health issues and advanced those issues for consideration as a mitigator. Tr. at 257-58, 262. Not only did the trial court consider Thompson's testimony and Counsel's argument concerning Thompson's mental health, but the court also examined the pre-sentence investigation report, which contains information regarding those mental health issues and Thompson's suicide attempts. The trial court characterized Thompson's mental health history as "extensive" and "self-reported" and listed it as one of two mitigating factors. Tr. at 267. Thompson focuses on the term "self-reported" in maintaining that

Counsel should have done more to substantiate his claims so that the trial court would have given the factor more weight. This argument is purely speculative and does not establish a reasonable probability that the trial court, having already identified the factor as mitigating, would have reduced his sentence had Counsel offered further documentation.

Specifically, Thompson asserts that Counsel was deficient for failing to introduce documents showing a direct link between his mental health issues and his battery offense, that is, his auditory hallucinations instructing him to hurt people. He relies on *Barany v. State*, in which our supreme court held that the trial court abused its discretion in failing to give mitigating consideration to the defendant's mental illness when it was directly related to his conduct.[2] 658 N.E.2d 60, 67 (Ind. 1995). In contrast, here, Counsel presented evidence concerning Thompson's mental illness, and the trial court gave it mitigating consideration. In short, even if Counsel had introduced the documents specifically related to Thompson's auditory hallucinations, we do not believe that there is a reasonable probability that his sentence would have been different.[3] He has failed to establish prejudice and therefore has failed to meet his burden of establishing ineffective assistance of counsel. Accordingly, we affirm.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

[2] Barany heard voices in his head telling him to bite and kill his victim, which he did. *Barany*, 658 N.E.2d at 67.

[3] In this vein, we disagree with Thompson's assertion that he is "serving a maximum sentence as additional punishment for having had untreated auditory hallucinations when he committed his offense." Appellant's Reply Br. at 3.