**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 26 2014, 7:46 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DONALD G. PERKINS**
Pendleton Correctional Facility
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD G. PERKINS,               )
                                 )
    Appellant-Petitioner,        )
                                 )
        vs.                    )    No. 03A01-1401-PC-9
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Respondent.         )

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1106-PC-3356

**September 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Donald G. Perkins appeals the denial of his petition for postconviction relief. He alleges that his counsel provided ineffective assistance by misrepresenting his sentence exposure during plea negotiations and by failing to object during his sentencing hearing. We affirm.

## Facts and Procedural History

The facts as summarized in an unpublished memorandum decision on Perkins's direct appeal are as follows:

> On March 13, 2006, a man working on a survey crew found a videotape alongside a road. The man took the tape home to view, and discovered that it depicted an adult male, later determined to be Perkins, engaged in numerous sexual acts with a young child, later determined to be his four-year-old daughter (the "Victim"). The tape depicts two incidents. During the first incident, Perkins and the Victim are both naked and the Victim is touching and fondling Perkins's penis. During the second incident, the Victim sat on Perkins's lap while both were naked and again touched and fondled Perkins's penis.
>
> On April 17, 2006, the State charged Perkins with child molesting, a Class A felony, two counts of child molesting, Class C felonies, two counts of child exploitation, Class C felonies, and performing sexual conduct in the presence of a minor, a Class D felony. On April 16, 2007, Perkins pled guilty to child molesting, a Class A felony, pursuant to a plea agreement under which the State agreed to dismiss the remaining charges. The State further agreed to not show the videotape at the sentencing hearing, although it reserved the right to show five still photos captured from the videotape.

*Perkins v. State*, No. 03A01-0707-CR-305 (Ind. Ct. App. Mar. 12, 2008).

The trial court sentenced Perkins to a forty-five year term executed following a June 12, 2007 hearing. Perkins challenged his sentence via direct appeal, claiming (1) that it was

unconstitutional under Article 1, Section 18 of the Indiana Constitution; (2) that the trial court abused its discretion in its treatment of aggravators and mitigators and in refusing to suspend any portion of the sentence; and (3) that it was inappropriate based on the nature of the offense and his character pursuant to Indiana Appellate Rule 7(B). Perkins's sentence was affirmed in all respects.

Perkins filed petitions for postconviction relief in 2011 and 2013, claiming that he was denied his constitutional right to effective assistance of counsel based on trial counsel's ("Counsel") performance during plea negotiations and at sentencing. Perkins specifically asserted that Counsel had promised him that he would receive a twenty-year sentence if he pled guilty to class A felony child molesting. As support, he relied on a handwritten notation in the margin of the waiver of rights/guilty plea form, which reads, "Sent 20 yrs." Pet. Ex. 7. The postconviction court denied Perkins's petition, and he now appeals pro se. Additional facts will be provided as necessary.

**Discussion and Decision**

Perkins contends that the postconviction court erred in denying his petition for postconviction relief. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Postconviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Postconviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247,

253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253. Postconviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds enumerated in the postconviction rules. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied* (2014). These rules limit the scope of relief to issues unknown or unavailable to the petitioner on direct appeal. *Id.*

Perkins maintains that he was denied his constitutional right to effective assistance of counsel. To prevail on an ineffective assistance claim, he must satisfy two components; he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not

support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley v. State*, 999 N.E.2d 975, 983 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).

In the context of a guilty plea, the prejudice prong of the *Strickland* test focuses on whether counsel's deficient performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To satisfy the prejudice requirement, the petitioner therefore must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Id.*; *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001). "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011).

Here, the postconviction court concluded that Counsel had not promised Perkins a twenty-year sentence for pleading guilty, that Perkins's guilty plea was voluntary, and that Counsel did not provide ineffective assistance. Appellant's App. at 52. In its findings, the court included specific excerpts from the transcript of the guilty plea hearing showing that both the trial court and Counsel informed Perkins about the sentencing range and the possibility of an aggravated sentence and that Perkins acknowledged that he understood. *Id.*

5

at 49-50.

With respect to the sentencing hearing, the postconviction court emphasized the extensive questioning and argument concerning the possibility of a sentence of up to fifty years, finding in pertinent part,[1]

> At the sentencing hearing, Counsel ask[ed] Perkins, "Can you give any reasons or any factors you think would allow the Judge to believe maybe that you're more of a candidate to be rehabilitated as opposed to being put in prison for fifty years …? In further questions, Counsel asked: "And you understand that the maximum sentence today would be fifty years. Is that correct?" Perkins: "Yes, sir." …. Counsel in his closing statement argue[d]: "Our view is a fifty year sentence, execute all fifty is a life sentence for Mr. Perkins and we believe that is not in the best interests of anyone in this case that he doesn't have the opportunity to prove himself." The prosecutor argued: "Your Honor, the State is asking for a fully aggravated sentence of fifty years." Judge Monroe sentenced Perkins to a sentence of 45 years. Perkins <u>did not protest at any of these times</u> that he had been promised a 20 year sentence.

*Id*. at 50-51 (internal citations omitted).

As for Perkins's direct appeal, the postconviction court found in pertinent part,

> Perkins … did not argue that he had been promised a twenty year sentence. In fact, his argument on appeal belies the fact that he knew that Judge Monroe could sentence him using aggravating factors. His appellate argument [was] that Judge Monroe abused his discretion in applying the aggravators and mitigators in arriving at the sentence. Perkins['s] sentence was affirmed.

*Id*. at 51.

With respect to the evidence presented at the postconviction hearing, the postconviction court's findings include the following:

---

[1] Throughout the findings, the postconviction court referred to Counsel by name. We refer to him simply as Counsel.

Perkins testified that Counsel told Perkins about the mitigating and [aggravating] circumstances and Counsel told Perkins about the maximum and minimum sentences. Perkins testified that when Counsel brought Perkins the plea offer that Perkins knew he was facing a maximum of fifty years. But, he also knew with the jailhouse advice that Judge Monroe wouldn't max you out so that with [Judge] Monroe he knew he'd only get 45-47 years.

Perkins then testified at length that Counsel wrote "20 yrs sent" on the Waiver form at the sentencing hearing. Perkins testified numerous times that it was at the sentencing hearing that Counsel wrote those words on the Waiver form. If one were to believe Perkins on this point, then Perkins would not have been promised a 20 year maximum sentence in order to induce Perkins to plead guilty. The Court does not believe that Perkins is correct on this point and does not believe that Counsel ever promised Perkins that Perkins would receive a twenty year maximum sentence.

Counsel testified that he never promises defendants what sentence they will receive. Judge Monroe rarely ever accepted plea bargains with set sentence terms in them[.] In this case, Counsel and the prosecutor did not have a discussion about a specific sentence for Perkins because both the State and Counsel knew that Judge Monroe would not accept such a plea bargain. Counsel testified that he did not promise Perkins a maximum sentence of 20 years. He estimated that [Judge] Monroe would sentence Perkins in the forty year range, but didn't make any guarantees on this.

*Id.* at 51-52 (internal citations omitted).

In his postconviction petition, Perkins maintains that Counsel promised him a maximum sentence of twenty years in exchange for his guilty plea. Other than Perkins's self-serving testimony, the only evidence tending to support such a promise is the "Sent 20 yrs" notation scrawled in the margin of his waiver of rights/guilty plea form. Pet. Ex. 7. At the guilty plea hearing and at sentencing, the trial court and Counsel questioned him concerning his understanding of the sentencing range and his likely exposure in terms of actual executed time. The time to raise his allegation of Counsel's promise would have been in response to those questions. He did not do so.

Subsequently, on direct appeal, he neither challenged the voluntariness of his guilty plea nor raised Counsel's alleged promise in conjunction with his sentencing challenge. Instead, he challenged the trial court's treatment of aggravators and mitigators and the appropriateness of his forty-five-year term. Again, the obvious argument would have been that his forty-five year sentence exceeded the twenty-year fixed maximum term that he was promised in exchange for his guilty plea. The absence of such a claim implicates his awareness that the trial court was not bound by any such maximum when determining his sentence.

Moreover, Perkins's own testimony at the postconviction hearing undercuts his claim that it was Counsel's promise of a twenty-year maximum term that induced him to plead guilty. First, he admitted that the State's promise to refrain from playing the videotape of the molestation during sentencing also was a factor in his decision to plead guilty. Second, his testimony as a whole indicates that he was well-versed in the credit time system in place at the time, that is, one day's credit for one day served.[2] Thus, under that system, a fifty-year sentence could produce an executed term of twenty-five years, and a twenty-year sentence could produce a ten-year executed term. *See*, *e.g.*, PCR Tr. at 46 (Perkins's explanation of why he wanted to plead guilty to a class B felony, not a class A felony). The postconviction record indicates that much of Counsel's advice regarding sentence exposure was made with Perkins's obvious understanding of credit time in mind. Third, Perkins demonstrated a

---

[2] Since that time, the system for determining credit time has been amended, with the designation of a "credit restricted felon." Ind. Code § 35-50-6-3.

familiarity with Judge Monroe's customary sentences, reporting that during his presentencing incarceration, other inmates told him to expect a sentence of five to seven years below the maximum, or about forty-five years. Finally, Perkins repeatedly testified that Counsel did not advise/promise the twenty years until the sentencing hearing (two months after he pled guilty). For example, on direct examination, he stated that Counsel "did not give me the advice on the 20 until the sentencing." *Id*. at 55. On cross examination, he twice indicated that Counsel had not put the twenty years in writing until the sentencing hearing. *Id*. at 56-57.

Simply put, Perkins has failed to demonstrate that Counsel's scrawled notation was the inducement for his previously-entered guilty plea. He did not object at sentencing and did not raise this issue on his direct appeal. He has failed to demonstrate that the postconviction court acted contrary to law in concluding that Counsel's performance did not render his guilty plea involuntary and that he therefore was not denied effective assistance of counsel. Accordingly, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.

9