**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 22 2013, 8:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

GREGORY L. SAYLOR,                )
                                  )
    Appellant-Petitioner,         )
                                  )
      vs.                      )    No. 02A03-1209-PC-396
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Respondent.          )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1008-PC-61

**April 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Gregory L. Saylor appeals the denial of his petition for post-conviction relief. He claims that his counsel provided ineffective assistance (1) in failing to properly advise him concerning the benefits and consequences of proceeding to trial on class A and C felony child molesting counts versus taking the State's plea offer for one class B felony child molesting count; and (2) in failing to raise his mental disability as a mitigating factor at sentencing. Finding no clear error, we affirm.

**Facts and Procedural History**

The facts as summarized in an unpublished memorandum decision on Saylor's direct appeal are as follows:

> Saylor is a cousin of J.N., who has a daughter A.N. One night in May 2007, eight-year-old A.N. spent the night at Saylor's house, along with S.N., A.N.'s half-sister. All three slept in the living room at Saylor's house. In the middle of the night, Saylor pulled down A.N.'s pants and underwear and used his hand to "feel" and "rub" her "private area." Saylor touched both the inside and outside of A.N.'s "private." Saylor also "started rubbing" A.N.'s "boobs" underneath her shirt. At some point, S.N. woke up and saw Saylor "on top of" A.N. on the couch, and she saw that Saylor "was sticking his hands in A.N.'s pants." S.N. then got up and went to the restroom, at which point Saylor got up from the couch and went back to the recliner where he had been sleeping. But after S.N. returned to the living room to go back to sleep, she saw Saylor return to the couch with A.N.
>
> S.N. talked to A.N. about what she had seen, and S.N. told A.N. that she should tell her parents. On June 8, 2007, A.N. was home with her parents, and Saylor was visiting. A.N. was supposed to spend the weekend with Saylor. But A.N. talked with her mother privately and told her that Saylor had been "trying to have s-e-x" with her. A.N. started crying, and her mother asked her whether she was telling the truth. A.N. assured her that she was telling the truth. A.N.'s mother then asked her to show her what Saylor had done to her. A.N. raised her shirt and told her mother that Saylor had fondled her chest and that he had put his hands down her pants. A.N. told her mother that Saylor had put his fingers inside her "private."

2

A.N.'s mother told J.N. about the molestation, and J.N. immediately confronted Saylor with A.N. and A.N.'s mother in the room. A.N. directly confronted Saylor, and Saylor responded that he "didn't remember." J.N. telephoned S.N., who confirmed that she had seen Saylor on the couch with A.N.

*Saylor v. State*, No. 02A05-0805-CR-268 (Ind. Ct. App. Nov. 26, 2008) (citations omitted).

The State charged Saylor with class A felony child molesting and class C felony child molesting. Before trial, the State offered him an open plea agreement in which he would plead guilty to class B felony child molesting, but he refused. The jury convicted Saylor as charged, and the trial court sentenced him to concurrent thirty- and four-year terms. Saylor appealed, claiming that the evidence was insufficient to support his class A felony conviction and challenging his sentence as inappropriate, and another panel of this Court affirmed on both issues.

In 2010, Saylor filed a petition for post-conviction relief, claiming that his counsel, Jeffrey G. Raff, provided ineffective assistance at trial and on direct appeal. He raised numerous allegations of ineffective assistance, including an allegation that counsel Raff failed to adequately explain the offered plea agreement within the period that it was held open and that he failed to raise his mental disability as a mitigator in sentencing. The post-conviction court issued an order denying Saylor's petition.[1] Saylor now appeals. Additional facts will be provided as necessary.

---

[1] We commend the post-conviction court for the thoroughness and clarity of its findings of fact and conclusions of law, which have significantly facilitated our review.

3

## Discussion and Decision

Saylor contends that the post-conviction court erred in denying his petition for post-conviction relief. The petitioner in a post-conviction proceeding "has the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Brown v. State*, 880 N.E.2d 1226, 1229 (Ind. Ct. App. 2008), *trans. denied*. When issuing its decision to grant or deny relief, the post-conviction court must issue findings of fact and conclusions of law. Ind. Post-Conviction Rule 1(6). A petitioner who appeals the denial of his post-conviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Brown*, 880 N.E.2d at 1230 (citation and quotation marks omitted). In other words, if a post-conviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction court. *Massey*, 955 N.E.2d at 253.

In his post-conviction petition, Saylor alleged that he received ineffective assistance of counsel. To prevail on an ineffective assistance claim, he must satisfy two components. *Id.* He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation that fell

4

below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind. Ct. App. 2008), *trans. denied*. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). Prejudice occurs when a reasonable probability exists that, "but for counsel's errors the result of the proceeding would have been different." *Brown*, 880 N.E.2d at 1230. We can dispose of claims upon failure of either component. *Id*.

## I. Explanation of Plea Offer

Saylor asserts that trial counsel provided ineffective assistance by failing to adequately explain the benefits and consequences of the plea offer. "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Counsel's failure to communicate a plea offer constitutes deficient performance. *Id*.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have

5

been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id*. at 1409.

To show prejudice from counsel's omission or misdescription regarding the penal consequences of a defendant pleading guilty versus going to trial, i.e., his relative sentence exposure, the defendant must demonstrate that there is "an objectively credible factual and legal basis" from which it may be concluded that there is a reasonable probability that but for counsel's errors, the defendant would have chosen a different course of action with respect to the plea offer. *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001) (citation omitted).[2]

Here, the State charged Saylor with one count each of class A felony child molesting and class C felony child molesting. The State offered him a plea agreement in which he would plead guilty to one count of child molesting as a class B felony. Indiana Code Section 35-42-4-3 differentiates between the classes of child molesting offenses in pertinent part as follows:

> (a) A person who, with a child under fourteen (14) years of age, performs or submits to … deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:
>
> (1) it is committed by a person at least twenty-one (21) years of age[.]
>
> ….
>
> (b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older

---

[2] Although *Segura* involved the reverse situation where the defendant raised ineffective assistance with respect to his decision to *accept* a guilty plea and thereby forgo a trial on the merits, as opposed to Saylor's decision to *forgo* the guilty plea in favor of a trial on the merits, both involve an allegation that counsel omitted or misdescribed penal consequences.

person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.

Pursuant to the plea agreement, if Saylor had pled guilty to class B felony child molesting instead of class A child molesting, the class C felony count would have been dismissed. Other than the differing sentencing ranges for class A felonies (twenty to fifty years, with a thirty-year advisory term)[3] and class B felonies (six to twenty years, with a ten-year advisory term),[4] the only elemental difference between the class A felony and class B felony child molesting offenses is that for the former, the perpetrator must be over age twenty-one, an undisputed issue for the thirty-five-year-old Saylor. Both the class A and class B felony levels of the offense involve deviate sexual conduct, which is "the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94(2).[5] A finger is an object for purposes of defining deviate sexual conduct. *Harwood v. State*, 555 N.E.2d 513, 515 (Ind. Ct. App. 1990). Throughout the proceedings, Saylor claimed that he did not commit sexual deviate conduct because he never penetrated A.N.'s vagina with his finger.

In this vein, Saylor's counsel testified at the post-conviction hearing by affidavit, averring in pertinent part,[6]

> I recall that the State offered Mr. Saylor a plea agreement, which I discussed with him. The proposed plea agreement provided that Mr. Saylor would plead guilty to a charge of child molesting as a Class B felony, amended

---

[3] Ind. Code § 35-50-2-4.

[4] Ind. Code § 35-50-2-5.

[5] Indiana Code Section 35-31.5-2-94 was previously codified as Indiana Code Section 35-41-1-9.

[6] Counsel Raff's affidavit, introduced at the post-conviction hearing, was also incorporated in pertinent part into the post-conviction court's findings.

7

from the original Class A felony charge; that sentencing would be left to the discretion of the court; and that a charge of child molesting as a Class C felony would be dismissed. On the basis of my examination of the facts of the case, and of my experience with the deputy prosecutor who represented the State in the original proceeding, I did not believe there was any realistic possibility of negotiating a more favorable plea agreement than this. I believed that it was in Mr. Saylor's best interests to accept the State's offer, and I repeatedly encouraged him to do so, but he consistently refused to accept the offer and insisted on going to trial instead. *It did not appear to me that his refusal to accept the offer arose from any failure to understand the provisions of the proposed plea agreement, the difference between the sentencing ranges for a Class A felony and a Class B felony, or any other matter related to the terms of the State's offer. Rather, it appeared to me that Mr. Saylor hoped the jury would find him not guilty of the Class A felony charge, and that he was unwilling to plead guilty to the amended Class B felony charge for that reason.*

Appellant's App. at 18 (emphasis added). Counsel's testimony is consistent with Saylor's assertions that he never committed the act necessary for a jury to convict him of either class A or class B felony child molestation, i.e., penetrating A.N.'s sex organ with his finger. In the face of such an assertion, it is unlikely that the trial court would have found a factual basis for any guilty plea by which Saylor would have to admit to the very conduct that he steadfastly denied committing. *See Graham v. State*, 941 N.E.2d 1091, 1099 (Ind. Ct. App. 2011) (emphasizing that trial court may not accept guilty plea when defendant simultaneously pleads guilty and maintains his innocence), *trans. denied*.

In short, Saylor took a risk by going to trial on the class A felony count, hoping that the jury would exonerate him based on his non-penetration claim. The jury did not, and he now claims that he would have accepted the plea offer but for counsel's alleged failure to

8

explain the discrepancy in sentence exposure[7] and the meaning of "penetration." After his convictions and before sentencing, the probation department prepared a presentence investigation report ("PSI"), which contained the following under "Defendant's Version" of the offenses: "Count I [class A felony sexual deviate conduct]: 'I did not do it.' Count II [class C felony child molesting]: 'I touched her.'" Confidential App. at 49. At sentencing, when the trial court asked Saylor if he had read the PSI, he responded affirmatively. When asked if there were any additions or corrections that needed to be made to the PSI, he responded only that his days in correctional had been miscalculated by five days. When asked if there were any other corrections to the PSI, he responded "No." Sent. Tr. at 4. Even later, at the post-conviction hearing, Saylor testified as follows when the State questioned him regarding the issue of penetration and whether he would have pled guilty to the class B felony charge:

> Q:    Okay. Mr. Saylor so you're saying that you felt you had no choice about pleading guilty or going to trial. So are you telling me that you would've rejected any guilty plea where you had to admit to some offense that did involve penetration?
>
> A:    I don't understand nothin'.
>
> Q:    …. You would've said you did not do anything that involved penetration right?
>
> A:    That involved penetration yes.

---

[7] To the extent Saylor argues that the discrepancy in sentence exposure alone should lend weight to his testimony, we remind him that our standard of review in post-conviction cases prohibits us from reweighing evidence and judging witness credibility. *Massey*, 955 N.E.2d at 253. The numerical difference in years of sentence exposure between class A and class B felonies is not dispositive in the face of his claim that he did not commit either offense.

Q:      So even if there was a Class B felony that did involve penetration you would've said you did not commit that felony right?

A:      Right. …

        [Defense counsel objects. Court overrules objection.]

Q:      Okay. So Mr. Saylor, if there was a Class B Felony that did involve penetration you would have said you did not commit Class B Felony right?

A:      (Unintelligible words.)

Q:      Okay.

A:      I don't know.

Q:      Is that just because you don't know if there really was a Class B Felony that did involve penetration or what?

A:      Probably [be]cause I didn't know a B would be a penetration charge.

Q:      *Okay so if a Class B Felony didn't involved* [sic] *penetration you would've pled guilty to it but if it did you wouldn't, is that what you're saying?*

A:      *Yes.*

P-C.R. Tr. at 20-22 (emphases added).

When defense counsel asked Saylor if, at the time the plea offer was made, he understood whether the class A and class B felony offenses would require him to admit to penetration, he responded, "*Not at that time* no." *Id*. at 23 (emphasis added). By the time of Saylor's post-conviction hearing, even as he was accusing his counsel of failing to adequately explain the concept of penetration, he better understood the concept and testified that if admitting to the class B felony offense was tantamount to admitting to penetration, he

would not have pled guilty to that offense. His steadfast adherence to this non-penetration claim, even after he better understood the term's meaning, also undercuts his argument that he was prejudiced by his counsel's failure to fully explain the plea offer to him in a timely manner.

Simply put, Saylor did not establish by a preponderance of evidence that he would have accepted the plea offer had it been more fully explained to him. In fact, his testimony suggests otherwise—that he would not have admitted to anything involving penetration. Thus, he has failed to establish that he was prejudiced by counsel's shortcomings in communicating the ramifications of the plea agreement. Based on the foregoing, we conclude that the post-conviction court did not commit clear error in concluding that Saylor did not receive ineffective assistance of counsel with respect to the plea offer.

## II. *Mental Disability as Sentencing Mitigator*

Saylor also contends that his counsel provided ineffective assistance in failing to raise his mental disability as a mitigating circumstance during sentencing. At the outset, we note that his mental disability *was* raised at sentencing. Saylor's father testified regarding Saylor's learning disability and attention deficit as well as his treatment at a mental health facility. Sent. Tr. at 5-6. Moreover, Saylor's counsel raised it in the context of mitigating circumstances, stating in pertinent part that Saylor "has some deficits in his education perhaps in his mental situation none of which arise to the level of serious matters, but they are matters to be recognized." *Id*. at 6. The trial court considered Saylor's mental health and specifically found it not to be a mitigator. *Id*. at 11-12.

11

Essentially, Saylor argues that the trial court did not give enough mitigating weight to his mental disability, and he cites several cases addressing the weight to be given to a particular factor. Those cases are no longer controlling, following our supreme court's opinion in *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218, which outlined a new framework for sentencing review. Within this new framework, "[t]he relative weight or value assignable to [the trial court's] reasons properly found or those which should have been found is not subject to review for abuse [of discretion]." *Id.* at 491. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493. "If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Id.* (citation omitted). The *Anglemyer* court rejected the defendant's claim that the trial court overlooked his mental illness as a mitigating factor, concluding that the trial court simply did not find it to be a significant factor influencing its sentencing decision. *Id.* Likewise, here, the trial court considered Saylor's mental health and concluded that it did not constitute a significant factor, and to the extent that Saylor's argument hinges on the mitigating weight placed on his mental disability, it would not have been subject to review on direct appeal.

Post-*Anglemyer*, a proper inquiry is whether Saylor's mental disability was a significant mitigating factor supported by the record. "[F]or a defendant's mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the

defendant's mental health and the crime in question." *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*. In the context of Saylor's ineffective assistance claim, we examine whether his counsel should have done more to ensure that a nexus was established between his mental health and his offenses. As stated, his counsel raised his mental health, his father testified about it, and the trial court considered it when pronouncing sentence.

Thus, we address Saylor's remaining argument that counsel failed to develop it as a mitigating factor by introducing a twenty-year-old report of Saylor's treatment at a mental health facility. The report, introduced at the post-conviction hearing, indicates that as a teenager, Saylor was admitted to Charter Beacon Hospital with a gastrointestinal condition related to stress and received counseling to help him cope with the underlying issues. P-CR Ex. K, L. The report also indicated that Saylor was "mildly retarded" but not hallucinatory or delusional. *Id*. In its findings, the post-conviction court incorporated the following testimony from counsel's affidavit concerning Saylor's alleged mental disability:

> My recollection of Mr. Saylor's mental capacity is that he appeared to be mildly retarded, but that he had no trouble understanding his case in my discussions with him. I recall that he had some history of treatment for mental health problems, but he did not appear to show any sign of mental illness when discussing his case with me.

Appellant's App. at 18. The post-conviction court also found that

> Saylor presented documents showing that he had been treated for mental health problems in the fairly remote past and that he suffered from mild mental retardation. He made no showing of any connection between these difficulties and his offenses; no showing of any inability to control his behavior; no showing of any significant limitations on his functioning that might

13

conceivably have any mitigating value; and no showing that he continued to suffer from any mental illness at the time of the offenses.

*Id.* at 27.

Even absent the twenty-year-old report, Saylor's mental disability was raised by counsel for consideration at sentencing. Saylor's father testified about it, and the sentencing court considered it and simply found it not to be a significant mitigating factor. The post-conviction court heard testimony, reviewed the sentencing record, and concluded that Saylor had failed to establish by a preponderance of evidence that he received ineffective assistance based on any failure by his counsel to raise his mental disability. We agree and therefore affirm the post-conviction court's denial of Saylor's petition for post-conviction relief.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.