**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DANIEL K. WHITEHEAD**
Yorktown, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Aug 20 2014, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

RAYSHAWN WINBUSH,                       )
                                        )
    Appellant-Petitioner,           )
                                        )
      vs.                        )       No. 48A02-1401-PC-32
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Respondent.            )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Angela Warner Sims, Judge
Cause No. 48C01-1106-PC-23

**August 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Rayshawn Winbush appeals the denial of his amended petition for postconviction relief. In his petition, he claims that he was denied his constitutional right to effective assistance of trial and appellate counsel ("Trial Counsel" and "Appellate Counsel" respectively). Finding that he has failed to establish ineffective assistance of Trial Counsel and that he has waived the issue with respect to Appellate Counsel, we affirm.

**Facts and Procedural History**

The facts as summarized by another panel of this Court on Winbush's direct appeal are as follows:

> Alicia Hilliard was contacted by Detective Kevin Earley of the Madison County Drug Task Force to work as a paid confidential informant [("CI")] in February or March of 2001. Hilliard had provided Detective Earley with information on previous cases involving the selling of crack cocaine. On March 22, Hilliard and Detective Earley set up a buy in which Hilliard was given $150 to purchase crack cocaine from Defendants. Hilliard was taken in an unmarked car by Detective Clifford Cole to the home of Eddie Rollins, where Defendants were staying. While there, Hilliard purchased crack cocaine from Winbush, whom she referred to as "B." Hilliard then returned to the car, following which a field test was performed by Detective Earley indicating that the item purchased was crack cocaine.
>
> Detective Earley, with the assistance of Officer Jake Brooks, then obtained a search warrant, which was executed at Rollins's residence the same evening in which the buy took place. Upon entering the residence, the officers took Defendants into custody. During a search of the home, the officers found bags containing crack cocaine, several items of drug paraphernalia, and two lots of money. One lot of money, which contained the buy money, was located in the bathroom in which Russell was found. The other lot of money was found in the pocket of Winbush's pants during a pat down search.

*Winbush v. State*, 776 N.E.2d 1219, 1221 (Ind. Ct. App. 2002), *trans. denied (2003).*

The State charged Winbush and Russell with class A felony possession of cocaine with intent to deal and class B felony dealing in cocaine. The two were tried jointly but with separate counsel. Neither testified during trial, and the jury found both men guilty as charged. Both filed direct appeals, and the same attorney was appointed to represent each of them. In that appeal, they raised joint claims concerning the admission of certain evidence and distinct claims regarding sentencing. Another panel of this Court affirmed their convictions and sentences.

A decade later, Winbush filed a petition for postconviction relief, followed by an amended petition, claiming that he received ineffective assistance of both trial and appellate counsel. At the postconviction hearing, Russell, Rollins, and Rollins's son testified on Winbush's behalf. Appellate Counsel also testified, but Winbush did not secure testimony, in person or otherwise, from Trial Counsel. The postconviction court issued findings of fact and conclusions of law denying Winbush's petition. Winbush now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Winbush contends that the postconviction court erred in denying his petition for postconviction relief. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Postconviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Postconviction Rule 1(6). A petitioner who appeals the denial of his

3

postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253.

**Section 1.0 – Ineffective Assistance of Trial Counsel – Standard of Review**

Winbush maintains that he was denied his constitutional right to effective assistance of trial counsel. To prevail on an ineffective assistance claim, he must satisfy two components; he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct.

4

App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley v. State*, 999 N.E.2d 975, 983 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).

Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater*, 989 N.E.2d at 770. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied*. "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011).

With respect to Trial Counsel's performance, the postconviction court issued extensive findings of fact and conclusions of law, which read in pertinent part,[1]

> 6.      At hearing, Winbush, without objection from the State, presented evidence about ineffective assistance based on issues not named in the Amended Petition: that Trial Counsel met him only once before trial, that he failed to execute the litigation strategy Winbush desired, that Trial Counsel failed to demonstrate the "perjurious" nature of the trial testimony of two of the State's witnesses because he was unprepared for trial, and that Winbush was deprived of the opportunity to testify at trial.
>
> ….
>
> 11.     Winbush failed to present Trial Counsel's testimony. Winbush offered only a letter purporting to be from Trial Counsel, who now (assuming

---

[1] In its findings, the postconviction court often refers to counsel by name. We refer to them as Trial Counsel and Appellate Counsel.

without deciding that the letter is what it purports to be) resides out of state, indicating that Trial Counsel was unable to appear since the timing of Winbush's subpoena did not allow him to appear without undue hardship. Winbush did not request a continuance to secure Trial Counsel's in-person testimony, and he did not offer Trial Counsel's testimony by other means, such as by deposition.

12. Post-conviction counsel offered into evidence, without objection, the trial transcripts. [Post-conviction] Counsel argued that on more than one occasion Trial Counsel made comments on the record, in the presence of the jury, that were harmful to his client, including these statements:

   a. "Judge, I'll stipulate that Mr. (Drug Task Force member Kevin) Early and his colleagues do excellent police work."

   b. "He's a law enforcement officer, Judge …. Everybody knows who's a lawyer [] that these men know the criminal code probably better than I do."

….

17. Trial Counsel was not ineffective for failing to object to joinder or for failing to request a severance of Winbush's trial.

   a. Trial Counsel does not render ineffective assistance by failing to execute the trial strategy of Petitioner's choice …. "[T]rial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness" ….

   b. Winbush has presented no evidence by which the Court can determine why Trial Counsel elected this strategy. Since the presumption is that counsel's representation is effective and the burden is on Winbush to prove to the contrary, the allegation must fail.

18. Trial Counsel was not ineffective for stating at trial that officers of the specialty task force "do good work" or that officers on occasion know the law as well or better than attorneys.

a. Like the winnowing of issues on appeal, such comments are strategic ones, designed to concede weaker points of an argument to gain credibility before the fact finder as to counsel's other, presumably stronger, points ….

b. Even if the strategy was unsuccessful and might appear questionable after the fact, it was not so deficient or so unreasonable as to fall outside an objective standard of reasonableness.

19. Trial Counsel was not ineffective for failing to meet with Winbush more than once prior to trial, for failing to pursue the trial strategy favored by Winbush, for failing to ferret out and present at trial evidence that two of the State's witnesses testified "perjuriously" at trial, or for failing to adequately prepare for trial.

a. To the extent these allegations were offered, the Court declines to find ineffective assistance of Trial Counsel on these bases, as they were not raised in the Amended petition and therefore are not properly before the Court.

b. Further, even had the allegations been properly raised, Winbush's request for relief would have been denied on the merits:

i. Winbush's statement about how often he met with Trial Counsel prior to trial is both uncorroborated and self-serving. Assuming without deciding that, had he testified, Trial Counsel *would have* corroborated Winbush's claim, the number of times counsel meets with his client prior to trial does not correlate to counsel's level of preparation. Much, if not most, of an advocate's work does not require consultation with the represented party. Winbush failed to show Trial Counsel ineffective based on failure to meet ….

ii. With few clearly defined exceptions, trial strategy decisions are those of counsel, not of the accused …. Whether Winbush "wanted" a severance of trial is irrelevant. Whether severance would best serve Winbush's interests is a decision of trial strategy: the specific domain of counsel, not the represented party ….

7

Winbush had the burden of challenging the strategy, yet he failed to avail himself of any one of multiple ways to bring testimony from out-of-state Trial Counsel before the court. His argument, unlikely at the outset given the high standard established via *Strickland*, would fail due to lack of evidence.

iii. Winbush implies that 'new evidence' show that his co-defendant actually committed the crimes for which Winbush has been convicted, and that Trial Counsel was ineffective because he failed to ferret out this evidence. Winbush's argument doubly fails, as the Court does not find the 'new evidence' to be credible and so, even had these witnesses so testified at the original trial, there remained more than sufficient evidence from which a reasonable jury could have found Winbush guilty.

….

iv. Winbush implies that he wished to testify at trial but was somehow prevented from doing so. The trial record does not support Winbush's interpretation[.]

….

21. Winbush has presented no evidence of an error by Trial Counsel so egregious that in all probability that error caused Winbush's conviction. His allegation of Ineffective Assistance of Trial Counsel fails.

Appellant's App. at 12-17 (internal citations omitted).

As noted in Finding 19, Winbush argued at the hearing numerous allegations that were not addressed in his amended postconviction petition. We agree with the postconviction court that those allegations are waived. *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001). Thus, we limit our discussion to the issues raised in the amended postconviction petition: (1) Trial Counsel's performance concerning joinder/severance; and (2) whether Trial Counsel improperly vouched for certain State witnesses.

8

## Section 1.1 – Joinder/Severance

Although the record is unclear concerning the mechanism by which Winbush's and Russell's causes were joined for trial, Winbush claims that the two causes should not have been tried together and that Trial Counsel was therefore ineffective in failing to object or to file a motion for severance. To prevail on a claim of ineffectiveness based on counsel's failure to seek separate trials, the petitioner must demonstrate that a motion for separate trials would have been granted. *Roche v. State*, 690 N.E.2d 1115, 1122 (Ind. 1997).

Two or more defendants can be joined in the same indictment or information where, as here, "each defendant is charged with each offense included." Ind. Code § 35-34-1-9(b)(1). Whenever two or more defendants have been joined for trial in the same information and one or more of the defendants moves for a separate trial, "the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant." Ind. Code § 35-34-1-11(b).

Here, Winbush and Russell not only were charged with each offense included in the information, but they also acted in concert, as part of a common plan, and were so closely connected that the overlap in evidence and witnesses was vast. Moreover, Winbush did not present evidence that he and Russell had "mutually antagonistic defenses." *See Williams v. State*, 706 N.E.2d 149, 156 (Ind. 1999) (finding no ineffective assistance of trial counsel for failing to renew motion for severance after pretrial denial of motion and no specific factual allegations to put trial court on notice of any mutually antagonistic defenses). Instead, both

9

defendants sought to defend by attacking the credibility of the CI, the owner of the crack house, and other civilian witnesses. Even to the extent that a particular witness's testimony might have implicated one defendant over the other, a defendant is not entitled to a separate trial merely because a codefendant implicates that defendant. *Id*. at 157. As stated, here, neither defendant elected to testify during trial. To the extent that Winbush now claims that Russell would have testified on his behalf had the causes been severed, we find no evidence to support this claim other than Russell's statement (made over a decade later, after he had served his sentence) that it was he, not Winbush, who sold the cocaine. The record is devoid of evidence indicating that Russell would have implicated himself at a juncture in which such testimony could have been used against him, even in a separate trial.[2]

Winbush himself testified at the postconviction hearing that Trial Counsel had consulted with Russell's counsel on the issue of severance and thought it best to proceed jointly. By not presenting any testimony from Trial Counsel, either in person or through deposition or affidavit, Winbush simply did not overcome the presumption that Trial Counsel acted strategically in not seeking severance. Even if Trial Counsel had requested severance, the trial court would have acted within its discretion in denying it. Based on the foregoing, we conclude that Winbush has failed to establish clear error in the postconviction court's

---

[2] Additionally, at the postconviction hearing, Russell acknowledged that he never notified the prosecutor or police during trial, at sentencing, or thereafter concerning his assertion that he acted alone.

10

determination that Trial Counsel did not perform deficiently by not requesting severance.[3]

## Section 1.2 – Vouching

Winbush also submits that Trial Counsel rendered ineffective assistance by improperly vouching for some of the State's witnesses. Indiana Evidence Rule 704(b) states, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." The rationale behind this rule is that vouching invades the province of the jurors to determine the weight to be assigned to a witness's testimony. *Palilonis v. State*, 970 N.E.2d 713, 729 (Ind. Ct. App. 2012), *trans. denied*. The Indiana Rules of Professional Conduct likewise prohibit vouching by counsel, stating in pertinent part,

A lawyer shall not:

….

(e)    in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused[.]

Ind. Professional Conduct Rule 3.4.

Here, Winbush cites as instances of alleged vouching Trial Counsel's statements complimenting the police for (1) doing excellent work; and (2) knowing the law. The first

---

[3] We also conclude that Winbush failed to establish clear error in the postconviction court's finding that he was not prejudiced. The overwhelming evidence shows that he and Russell came to Anderson together, that they engaged in the sale of cocaine from Rollins's home, that they both were found in possession of large sums of cash, and that Winbush exhibited consciousness of guilt, that is, he hid and gave a false name to police at the scene.

11

occurred during the State's direct examination of Anderson Police Detective Kevin Earley, as the detective was describing his experience with the CI and the manner in which Winbush and Russell had come to his attention, that is, from "another source" describing "two male blacks." Trial Tr. at 273. Trial Counsel immediately objected on hearsay grounds, and the State responded that the information was offered not for the truth of the matter asserted but to show how the investigation proceeded. When the trial court overruled the objection, Trial Counsel added, "Judge, I'll stipulate that Mr. Earley and his colleagues do excellent police work." *Id*.

While Winbush characterizes the statement as vouching for police in general and Detective Earley specifically, we do not read the statement as such, especially when placed in context. The next few pages of the record show that Trial Counsel was trying to prevent the admission of certain evidence of prior bad acts in the form of other instances of dealing involving the two defendants. Ind. Evidence Rule 404(b). When the State characterized its line of questioning as merely providing the background for the investigation and its use of the CI, Trial Counsel attempted to cut off the questioning by stipulating that police do good investigatory work. The probable prejudicial effect of Trial Counsel's stipulation is summed up by the State's response, "That's not the point, Judge." Trial Tr. at 273. We agree with the State that the stipulation bore little relevance, whether in the limited context of interrupting the State's line of questioning or the larger context of Trial Counsel's defense strategy. Neither the quality of police work nor the credibility of Detective Earley was attacked as part of any defense strategy. Instead, the defense attacked the credibility of the civilian witnesses,

12

including the CI and crack house owner Rollins. To the extent that Trial Counsel's statement about the quality of police work could have arguably amounted to impermissible vouching, it would not prejudice Winbush's defense.

Trial Counsel made his second alleged vouching statement during his cross-examination of Detective Earley. The general line of questioning concerned the Drug Task Force's use of informants and whether they are paid for their work or whether they become informants to "work[] off charges." *Id*. at 339. Trial Counsel then attempted to narrow his questioning to elicit testimony about the CI used in this case.

> Q. And they weren't … [CI] nor her mother were ever charged with Maintaining a House of Common Nuisance?
>
> A. Correct.
>
> Q. Even though you know that there had been more than one sale of drugs out of that house on 9th Street or rather you'd known that there [sic] house has been used for drug sales more than once, correct?
>
> A. Correct.
>
> Q. That would make Maintaining a House of Common Nuisance a felony, wouldn't it?
>
> [State objects on relevancy grounds, Trial Counsel interrupts, and trial court admonishes Trial Counsel to let the State finish.]
>
> [THE STATE]: Judge, he's asking whether or not that would be felony or not, but that's not necessarily his call. He's already testified that he knows ….
>
> Trial Counsel: *He's a law enforcement officer, Judge. I know … everybody knows who's a lawyers [sic] that these men know the criminal code probably better than I do.*
>
> JUDGE: Well, thank you for that but the … but we're walking a fine line here

> because you have the right to inquire about any consideration or favors that might have been extended to [CI]. But the thrust of these questions have to do with her mother's house. So I'm not real sure if the principle [of] law you are espousing is applicable to this hearing.

*Id*. at 341-42 (emphasis added).

Placed in context, the italicized statement does not amount to vouching for the detective's knowledge of the law. Instead, as best we can discern, it was an attempt by Trial Counsel to cast doubt on the CI's credibility by emphasizing the seriousness of the charges to which law enforcement could have subjected her had she not cooperated with the controlled buy. As previously noted, Winbush's failure to secure Trial Counsel's in-person or deposition testimony has created an evidentiary vacuum concerning Counsel's strategy in making the comment. Nonetheless, because it is not vouching, Trial Counsel cannot be found to have performed deficiently on that basis. In sum, Winbush has failed to establish clear error in the postconviction court's determination that Trial Counsel did not render ineffective assistance based on his alleged vouching statements.

### Section 2 – Appellate Counsel

Winbush also maintains that he was denied his constitutional right to effective assistance of appellate counsel. In his appellant's brief, he claims that Appellate Counsel failed to adequately consult with him concerning issue selection, failed to discover perjured testimony, and failed to raise ineffective assistance of trial counsel. However, Winbush failed to raise any of the aforementioned claims in his amended petition for postconviction relief. As such, they are waived. *See Allen v. State*, 749 N.E.2d at 1171 (issues not raised in petition for postconviction relief may not be raised in the postconviction appeal).

14

In his amended postconviction petition, Winbush raised only one claim concerning Appellate Counsel's performance, namely, that Appellate Counsel rendered ineffective assistance in the form of a conflict of interest based on his joint representation of Winbush and codefendant Russell on direct appeal. Curiously, Winbush makes only a fleeting reference to the conflict-of-interest issue in his appellant's brief, and as such, we agree with the State that he seemingly "has abandoned that claim." Appellee's Br. at 24 n.3. Because he has failed to develop a cogent argument concerning his conflict-of-interest claim, he has waived it pursuant to Indiana Appellate Rule 46(A)(8).[4] *Ross v. State*, 877 N.E.2d 829, 833 (Ind. Ct. App. 2007), *trans. denied* (2008).

In sum, Winbush has failed to establish clear error in the postconviction court's determination that Trial Counsel did not perform deficiently and has waived his claims concerning Appellate Counsel's performance. Accordingly, we affirm the postconviction court's denial of his amended petition for postconviction relief.

Affirmed.

RILEY, J., and MATHIAS, J., concur.

---

[4] Waiver notwithstanding, at the postconviction hearing, Appellate Counsel testified that he examined the trial court record to ascertain whether joint representation would amount to a conflict of interest. He concluded that it would not. Neither Winbush nor Russell testified at the trial, and the trial court record is devoid of evidence indicating any actual conflict between the defense theories pursued by each of their counsel during trial. *See Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000) (emphasizing that joint representation is not per se evidence of ineffective assistance, that mere possibility of conflict of interest is insufficient to impugn a criminal conviction, and that petitioner must establish actual conflict of interest adversely affecting counsel's performance). What Winbush asks is that we examine his claim in hindsight, reweighing the postconviction testimony of Russell and other witnesses not offered until a decade later (notably, after Russell had completed his executed sentence for the offense). Appellate Counsel could not have been expected to discover these extra-record claims. *Woods v. State*, 701 N.E.2d 1208, 1216 (Ind. 1998). Moreover, we remind Winbush that the postconviction court specifically found that these belated statements lacked credibility and that we may not judge witness credibility on appeal. *Massey*, 955 N.E.2d at 253.